**COMMONWEALTH of Pennsylvania**

v.

**James JUDD, Appellant.**

Superior Court of Pennsylvania.

Submitted May 9, 2005.

Filed April 12, 2006.

Peter A. Levin, Philadelphia, for appellant.

Hugh J. Burns, Jr., Asst. Dist. Atty., Philadelphia, for Com., appellee.

BEFORE: TODD, PANELLA, and POPOVICH, JJ.

OPINION BY PANELLA, J.:

¶ 1 Appellant, James Judd, appeals from the judgment of sentence entered on April 22, 2004, by the Honorable Anthony

DeFino, Court of Common Pleas of Philadelphia County. After careful review, we affirm.

¶ 2 Judd lived in the basement of a friend's aunt's home, who was affectionately known as "grandmother" in her neighborhood. "Grandmother" often cared for the victims in this case, O.R. and S.H. O.R. and S.H. knew Judd as "Uncle James." Judd often drove O.R. and S.H. to school and took them shopping. He often allowed the children into his basement apartment to watch television.

¶ 3 In June 2002, O.R.'s parents became worried after hearing from a third party that Judd may have inappropriately touched O.R. When asked about Judd, O.R. admitted that Judd had touched her inappropriately. Furthermore, O.R. stated that Judd would often take the children into his apartment to watch pornography with him. Several days later, O.R.'s father met with S.H.'s mother, and the two questioned S.H. Upon being questioned, S.H. stated that Judd had put his "tail" in her "cuckoo."

¶ 4 Following these discussions, O.R.'s father contacted the police. During the police investigation, both children revealed further instances of sexual abuse by Judd. Judd was subsequently arrested, and a jury trial commenced on December 8, 2003. On December 10, 2003, Judd was convicted on two counts of rape,[1] two counts of indecent assault,[2] two counts of corrupting the morals of a minor,[3] and one count of endangering the welfare of a child.[4] Thereafter, on April 22, 2004, the trial court sentenced Judd to an aggregate term of imprisonment of not less than twelve nor more than twenty-four years. Judd filed post-sentence motions on April

1.  18 PA. CONS. STAT. ANN. § 3121

2.  18 PA. CONS. STAT. ANN. § 3126

3.  18 PA. CONS. STAT. ANN. § 6301

4.  18 PA. CONS. STAT. ANN. § 4304

25, 2004, which the trial court denied on April 29, 2004. This timely appeal followed.

¶ 5 On appeal, Judd raises the following issues for our review:

I. Whether the trial court was in error in not granting the following pretrial motions submitted by Appellant:

A. Motions to Determine Competency of Minor Witnesses and Request for Taint Hearing.

. . .

B. Motion to Compel Bill of Particulars.

. . .

C. Motion to Sever and Reply to Commonwealth's Motion to Consolidate.

. . .

D. Motion to Prohibit Introduction of Prior Convictions.

. . .

E. Motion to Preclude hearsay Statements of O.R. or S.H. From Any Family Member, Police Officer, Social Worker, Hospital Staff or Any Other Person.

. . .

F. Motion to Preclude Identification of Appellant Through Medical Witnesses and Documents.

. . .

II. Whether the trial judge was in error in not granting Appellants [sic] post trial Motion that the verdict was against the weight of the evidence.

Appellant's Brief, at 4. As stated, Judd's first six issues on appeal deal with the trial court's handling of the pre-trial motions filed by Judd. We address the issues *seriatim*.

¶ 6 First, Judd argues that the trial court erred in finding O.R. and S.H. competent to testify. The determination of a witness's competency rests within the sound discretion of the trial court. *Commonwealth v. Bishop*, 742 A.2d 178 (Pa.Super.1999), *appeal denied*, 563 Pa. 638, 758 A.2d 1194 (2000). The decision of the trial court will not be disturbed absent a clear abuse of that discretion; consequently, as the Superior Court has previously observed, "[o]ur standard of review of rulings on the competency of witnesses is very limited indeed." 742 A.2d at 186, *citing Commonwealth v. McMaster*, 446 Pa.Super. 261, 666 A.2d 724, 727 (1995).

¶ 7 In Pennsylvania, the general rule is that every witness is presumed to be competent to be a witness. *Commonwealth v. Delbridge*, 578 Pa. 641, 662, 855 A.2d 27, 39 (2003), *opinion after remand*, 580 Pa. 68, 859 A.2d 1254 (2004); Pa.R.E. 601(a). However, young children must be examined for competency pursuant to the following test:

(1) The witness must be capable of expressing intelligent answers to questions;

(2) The witness must have been capable of observing the event to be testified about and have the ability to remember it; and,

(3) An awareness of the duty to tell the truth.

*Delbridge*, 578 Pa. at 662, 855 A.2d at 39; *Rosche v. McCoy*, 397 Pa. 615, 620–621, 156 A.2d 307, 310 (1959). An allegation of taint centers on the second element of the above test. *Delbridge*, 578 Pa. at 664, 855 A.2d at 39. An allegation of taint must be supported by clear and convincing evidence. *Commonwealth v. Lukowich*, 875 A.2d 1169, 1173 (Pa.Super.2005), *appeal denied*, 584 Pa. 706, 885 A.2d 41 (2005). Where an allegation of taint is made before trial the "appropriate venue" for investigation into such a claim is a competency hearing. *Delbridge*, 578 Pa. at 664, 855 A.2d at 40. A competency hearing is

centered on the inquiry into "the minimal capacity of the witness to communicate, to observe an event and accurately recall that observation, and to understand the necessity to speak the truth." *Id.*, 578 Pa. at 663, 855 A.2d at 40. Credibility is not an issue at a competency hearing. *Id.*

¶ 8 Our Supreme Court has set the age of fourteen years as the upper limit to consider a witness immature for purposes of determining competency. *Rosche v. McCoy*, 397 Pa. 615, 156 A.2d 307 (1959). In turn, the concern addressed by a taint hearing is based on the immaturity of the witness:

> The capacity of young children to testify has always been a concern as their immaturity can impact their ability to meet the minimal legal requirements of competency. Common experience informs us that children are, by their very essence, fanciful creatures who have difficulty distinguishing fantasy from reality; who when asked a question want to give the "right" answer, the answer that pleases the interrogator; who are subject to repeat ideas placed in their heads by others; and who have limited capacity for accurate memory.

*Delbridge*, 578 Pa. at 662, 855 A.2d at 39. These concerns clearly become less relevant as a witness's age increases, ultimately being rendered totally irrelevant as a matter of law by age fourteen. While the age of fourteen is somewhat arbitrary, it appears to give a sufficient buffer for slow developers such that any issue with competency at that age would need to be caused by some factor other than immaturity.

¶ 9 In the case *sub judice*, O.R. was fifteen years old when she testified at trial. N.T. 12/9/2003, at 9. As such, any issue with her ability to correctly remember the events in question is properly a question of credibility, and not of taint. Accordingly, Judd's challenge to the trial court's decision denying a taint hearing with respect to O.R. merits no relief.

¶ 10 In contrast, S.H. was six years old when she testified. Our Supreme Court has noted that the ability of a six year old to properly recall and comprehend past events and then adequately communicate these memories is inherently suspect. *Delbridge*, 578 Pa. at 665, 855 A.2d at 41. We therefore must address Judd's allegations of taint with respect to S.H. directly.

¶ 11 In order for the court to investigate the issue of taint at a competency hearing, however, the moving party must come forward with evidence of taint. *Id.*, 578 Pa. at 664, 855 A.2d at 40. Once the moving party comes forward with some evidence of taint, the court must expand the scope of the competency hearing to investigate that specific question. *Id.* The party alleging taint bears the burden of production of "some evidence" of taint as well as the ultimate burden of persuasion to show taint by clear and convincing evidence after any hearing on the matter. *Id.*, 578 Pa. at 664–665, 855 A.2d at 41. When determining whether a defendant has presented "some evidence" of taint, the court must consider the totality of the circumstances surrounding the child's allegations. *Id.*, 578 Pa. at 664, 855 A.2d at 41. Some of the factors that are relevant in this analysis are: (1) the age of the child; (2) the existence of a motive hostile to the defendant on the part of the child's primary custodian; (3) the possibility that the child's primary custodian is unusually likely to read abuse into normal interaction; (4) whether the child was subjected to repeated interviews by various adults in positions of authority; (5) whether an interested adult was present during the course of any interviews; and (6) the existence of independent evidence regarding the interview techniques employed. *Id.*

¶ 12 In the present case, the trial court determined that Judd had not met his burden of producing sufficient evidence to warrant a closer inspection of the issue of taint with respect to S.H., and denied the motion for a taint hearing. N.T., 12/5/2003, at 89. We commend Assistant District Attorney Leslie Gomez for providing the trial court and opposing counsel with thorough and comprehensive information regarding the pretrial interviews and statements made by S.H. *Id.* at 63–89. It is clear from the record before us that the trial court conscientiously considered the uncontested proffered evidence of the interviews with S.H. in light of the factors set forth in *Delbridge.* We agree with the trial court that no evidence of taint was presented, let alone evidence which warranted a competency hearing to further investigate the issue of taint.

¶ 13 We have also closely examined the competency hearing held by the trial court out of the hearing of the jury. N.T., 12/9/2003, at 183–195. The trial court's determination of S.H.'s competency is supported in the record. Although she readily admitted she was scared, S.H. gave responsive and clear answers to ADA Gomez, defense counsel and the trial judge. The trial court acted well within its discretion in finding S.H. competent to testify.

¶ 14 Judd next argues that the trial court erred in failing to grant his motion for a bill of particulars. The purpose of a bill of particulars is to give notice to the defendant of the nature of offenses charged so that he may prepare a proper defense and avoid surprise. *Commonwealth v. Dreibelbis*, 493 Pa. 466, 426 A.2d 1111 (1981). The defendant must set forth the particulars that are being sought, as well as explain why these particulars are being requested. Pa.R.Crim.P., Rule 572(B), 42 PA. CONS. STAT. ANN. A trial court has broad discretion in fashioning the relief given to a defendant who moves for a bill of particulars. Pa.R.Crim.P., Rule 572(D), 42 PA. CONS. STAT. ANN.

¶ 15 Judd contends that the dates contained in the Bills of Information filed by the Commonwealth, which cover a period of over one year without fixing a specific date for any offense, denied him a chance to prepare a proper defense. However, Judd has never explained how the lack of specific dates hampered his defense. Judd has not presented any evidence or argument showing that (1) the Commonwealth withheld exculpatory evidence, or evidence otherwise favorable to the accused; (2) exceptional circumstances existed; or (3) "surprises" occurred at the trial; therefore, we do not find an abuse of discretion. *See Commonwealth v. Mercado*, 437 Pa.Super. 228, 649 A.2d 946, 959–960 (1994).

¶ 16 Turning to the next issue raised on appeal, Judd argues that the trial court erred in consolidating these cases for trial.[5] "Offenses charged in separate . . . informations may be tried to together if . . . the evidence of each of the offenses

---

**5.** The Commonwealth failed to provide notice of consolidation pursuant to Pa.R.Crim.P, Rule 582(B)(1), 42 PA. CONS. STAT. ANN., and further failed to file a motion for consolidation pursuant to Rule 582(B)(2) until after receiving notice that Judd was preparing to file a motion to sever. Judd has not raised any challenge to the procedural aspects of the consolidation on appeal; in fact, at the hearing regarding Judd's motion to sever, trial counsel stated that Judd had not suffered any prejudice in the preparation of his case in relation to the late consolidation motion. N.T., 12/5/2003, at 13. It was further uncontested that the cases had been tracked together since being listed jointly for a preliminary hearing. *Id.* at 11–12.

would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion." Pa.R.Crim.P., Rule 582(A)(1)(a), 42 Pa. Cons. Stat. Ann. Judd attacks the consolidation on both grounds. First, Judd argues that the evidence of each offense would not be admissible in a separate trial for the other offense as it would constitute evidence of other bad acts. Second, Judd argues that consolidation of the two cases created a high risk of confusing the jury.

¶ 17 Evidence of other bad acts is not admissible in a criminal trial in order to prove that the defendant had a propensity to act in such a manner. Pa.R.E., Rule 404(b)(1), 42 Pa. Cons. Stat. Ann. The Commonwealth argues that the evidence of each offense would have been admissible in a separate trial pursuant to a "common scheme" exception to the rule against prior bad acts evidence. The trial court, while failing to address this issue in its opinion pursuant to Pa.R.A.P., Rule 1925, 42 Pa. Cons. Stat. Ann., apparently agreed with the Commonwealth's position when it denied Judd's motion. N.T., 12/5/2003, at 8–9.

¶ 18 The "common scheme" exception to the prohibition of evidence of prior bad acts was a feature of the pre-codification law regarding evidence. *See e.g. Commonwealth v. Elliott*, 549 Pa. 132, 146, 700 A.2d 1243, 1250 (1997), *cert. denied*, 524 U.S. 955, 118 S.Ct. 2375, 141 L.Ed.2d 742 (1998); *Commonwealth v. Hughes*, 521 Pa. 423, 458, 555 A.2d 1264, 1282 (1989). Traditionally, Pennsylvania case law allowed that evidence of prior bad acts could be admitted if it were relevant to show: (1) motive; (2) intent or knowledge; (3) absence of mistake or accident; (4) common scheme or plan; or (5) identity. *Common-*

*wealth v. Sam*, 535 Pa. 350, 635 A.2d 603 (1993), *cert. denied*, 511 U.S. 1115, 114 S.Ct. 2123, 128 L.Ed.2d 678 (1994).

¶ 19 Several commentators have noted that under Rule 404, case law applying the "common scheme or plan" exclusion has been called into doubt based on the fact that it is not listed in Rule 404(b)(2). *See* Leonard Packel and Anne Bowen Poulin, Pennsylvania Evidence § 404–9(a) (2d ed. 1999); Edward D. Ohlbaum, Ohlbaum on the Pennsylvania Rules of Evidence, § 404.22[2]-[4] (2003–2004 ed.). However, our Pennsylvania Supreme Court recently reiterated the settled rule of admissibility regarding evidence which demonstrates a defendant's criminal tendencies by way of a common plan, scheme or design:

> [While e]vidence of distinct crimes is inadmissible solely to demonstrate a defendant's criminal tendencies[, s]uch evidence is admissible ... to show a common plan, scheme or design embracing commission of multiple crimes, or to establish the identity of the perpetrator, so long as proof of one crime tends to prove the others. This will be true when there are shared similarities in the details of each crime.

*Commonwealth v. Robinson*, 581 Pa. 154, 190, 864 A.2d 460, 481 (2004), *cert. denied*, —— U.S. ——, 126 S.Ct. 559, 163 L.Ed.2d 470, 74 USLW 3273 (2005) (quoting *Commonwealth v. Keaton*, 556 Pa. 442, 457, 729 A.2d 529, 537 (1999)) (internal citations omitted), *cert. denied*, 528 U.S. 1163, 120 S.Ct. 1180, 145 L.Ed.2d 1087 (2000).

¶ 20 As stated, evidence of other crimes is admissible when it tends to prove a *common plan, scheme or design* embracing the commission of two or more crimes so related to each other that proof of one

tends to prove the others.[6] The following factors should be considered in establishing similarity:

- the elapsed time between the crimes;
- the geographical proximity of the crime scenes; and
- the manner in which the crimes were committed.

*Commonwealth v. Clayton,* 506 Pa. 24, 33, 483 A.2d 1345, 1349–1350 (1984) (Zappala, J., with two Justices concurring and four Justices concurring in result); *see also, Commonwealth v. Miller,* 541 Pa. 531, 547, 664 A.2d 1310, 1318 (1995), *cert. denied,* 516 U.S. 1122, 116 S.Ct. 932, 133 L.Ed.2d 859 (1996).

¶ 21 Similar to other cases presented to our appellate courts, we find here that "[i]t is difficult to conceive of any situation where the propriety of joinder could be clearer." *Commonwealth v. Morris,* 493 Pa. 164, 177, 425 A.2d 715, 721 (1981). The charges against Judd constituted an ongoing course of extremely similar sexual abuse against two youthful victims, during overlapping periods of time, at the same general locale—his basement apartment at Ola Campbell's house. Moreover, the evidence concerning each alleged victim at trial was readily separable by the jury, as each victim testified to the distinctive events supporting the respective charges, corroborated by other distinguishable evidence. Thus, contrary to Judd's arguments, there was no risk of confusing the jury.[7] Although there were factual similarities in light of the temporal relationship of the crimes, and the physical location of the attacks, the trial judge carefully kept the charges separated at trial, and clearly separated the charges in his jury instructions at the conclusion of trial. N.T., 12/10/2003, at 219–237. Therefore, we find no error nor any prejudice in the consolidation.

¶ 22 In his next issue, Judd argues that the trial court erred in failing to preclude the Commonwealth from presenting evidence of his past convictions. Initially, we must note that the trial court actually did grant Judd's motion to exclude in part. The trial court stated that "any conviction [for a] *crimen falsi,* ten years or more ago, would not be admissible." N.T., 12/5/2003, at 39. Defense counsel then addressed the issue of Judd's more recent convictions for simple assault, reckless endangerment, and driving under the influence. The trial court ruled that if Judd

---

6. This type of evidence is also permissibly used to establish the *identity* of the person charged: "To prove other like crimes by the accused *so nearly identical in method* as to earmark them as the handiwork of the accused." *Commonwealth v. Rush,* 538 Pa. 104, 113, 646 A.2d 557, 561 (1994) (quoting McCormick, *Evidence,* § 190 (1972 2d ed.)). In the case *sub judice,* however, identity was not at issue. There is no suggestion that Judd asserted that the children had misidentified him, and instead were molested by another man. The defense was a denial of the criminal conduct, and the only issue truly presented to the jury was whether they believed the Commonwealth witnesses.

7. In this context, when severance is the issue, prejudice

[i]s not simply prejudice in the sense that appellant will be linked to the crimes for which he is being prosecuted, for that sort of prejudice is ostensibly the purpose of all Commonwealth evidence. The prejudice of which ... [consolidation] speaks is rather that which would occur if the evidence tended to convict appellant only by showing his propensity to commit crimes, or because the jury was incapable of separating the evidence or could not avoid cumulating the evidence.

*Commonwealth v. Lark,* 518 Pa. 290, 307–308, 543 A.2d 491, 499 (1988).

presented character evidence to establish that he was a non-violent person, the Commonwealth would be allowed to present evidence of his more recent prior convictions. This ruling was proper, as impeachment of a character witness is allowed through inquiry into specific acts relevant to the character trait in question. Pa. R.E., Rule 405, 42 Pa. Cons. Stat. Ann. Accordingly, this claim merits Judd no relief on appeal.

¶ 23 Judd next contends that the trial court erred in admitting hearsay statements. However, Judd fails to make any attempt to identify, much less cite to, the statements he is challenging. While we acknowledge that he is technically challenging the trial court's pre-trial ruling, we note that Judd failed to identify objectionable statements during oral argument before the trial court. Furthermore, it is necessary for Judd to cite to the trial transcript to demonstrate that hearsay statements were actually proffered by the Commonwealth at trial, or else any error in the trial court's pre-trial ruling would be harmless. Accordingly, we find that this issue is waived for purposes of our review. *See Commonwealth v. Miller,* 721 A.2d 1121, 1124 (Pa.Super.1998).

¶ 24 Finally, in his last argument regarding pretrial rulings, Judd contends that the trial court erred by denying his motion to preclude the Commonwealth from identifying him through medical records and witnesses. Judd admits in his brief that no medical witness identified him by name in testimony. Rather, Judd focuses on the presence of his name on medical reports which were admitted into evidence. However, these reports were never published to the jury. Accordingly, Judd was never identified to the jury by medical reports or by medical testimony. As a result, there is no merit to this issue.

¶ 25 We now turn to Judd's last argument. In his Pa.R.A.P.1925(b) statement, Judd challenged the weight, but not sufficiency, of the evidence presented at trial. In the trial court's 1925(a) opinion, the court only addressed the sufficiency claim. In his brief to this Court, Judd confusingly argues the lack of sufficiency of the evidence, although he captions his argument that the verdict was "against the weight of the evidence." Because the argument portion of his brief is limited to the contention that the evidence was not sufficient to prove his guilt beyond a reasonable doubt, we address the sufficiency issue alone.

¶ 26 In determining sufficiency of the evidence, the Court must review the evidence admitted at trial, along with any reasonable inferences that may be drawn from that evidence, in the light most favorable to the verdict winner. *Commonwealth v. Kimbrough,* 872 A.2d 1244, 1248 (Pa.Super.2005), *appeal denied,* 585 Pa. 687, 887 A.2d 1240 (2005). A conviction will be upheld if after review we find that the jury could have found every element of the crime beyond a reasonable doubt. *Commonwealth v. Bullick,* 830 A.2d 998, 1000 (Pa.Super.2003). We may not weigh the evidence or substitute our judgment for that of the fact-finder. *Commonwealth v. DiStefano,* 782 A.2d 574 582 (Pa.Super.2001), *appeal denied,* 569 Pa. 716, 806 A.2d 858 (2002). The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. *Commonwealth v. Reaser,* 851 A.2d 144, 147 (Pa.Super.2004). "Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." *Commonwealth v. Sheppard,* 837 A.2d 555, 557 (Pa.Super.2003) (citing

*Commonwealth v. Cassidy,* 447 Pa.Super. 192, 668 A.2d 1143, 1144 (1995)).

¶ 27 As the trial court wisely noted, there was ample evidence to support each element of the crimes charged:

At trial the oldest victim testified that Judd touched her both over and under her clothing on many occasions. On at least one occasion he forced her onto a bed, pulled her pants below her thighs and placed his penis "between the cheeks" of her vagina. She also testified that Judd would watch pornography tapes with her and on one occasion the five year old was present. The youngest victim also testified at trial. According to her, Judd pulled her pants down while they were in the basement of her grandmother's house and put "his private part" in "her private part."

Trial Court Opinion at 2–3, 12–2–2004. "[T]he trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence." *Commonwealth v. Gooding,* 818 A.2d 546, 549 (Pa.Super.2003). "If the factfinder reasonably could have determined from the evidence adduced that all of the necessary elements of the crime[s] were established, then that evidence will be deemed sufficient to support the verdict." *Commonwealth v. Hopkins,* 747 A.2d 910, 914 (Pa.Super.2000) (citation omitted).

¶ 28 Here, the jury evidently found the Commonwealth's witnesses credible. We are precluded from reweighing the evidence and substituting our judgment for that of the factfinder. *Commonwealth v. Chiari,* 741 A.2d 770 (Pa.Super.1999). Accordingly, Judd's claim of insufficient evidence must fail.

¶ 29 Judgment of sentence affirmed.