J-A25031-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JOSHUA LEE HOLLABAUGH, | : | |
| | : | |
| Appellant | : | No. 211 MDA 2019 |

Appeal from the Judgment of Sentence Entered November 29, 2018
in the Court of Common Pleas of Huntingdon County
Criminal Division at No(s):  CP-31-CR-0000246-2017

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JOSHUA LEE HOLLABAUGH, | : | |
| | : | |
| Appellant | : | No. 212 MDA 2019 |

Appeal from the Judgment of Sentence Entered November 29, 2018
in the Court of Common Pleas of Huntingdon County
Criminal Division at No(s):  CP-31-CR-0000247-2017

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JOSHUA LEE HOLLABAUGH, | : | |
| | : | |
| Appellant | : | No. 213 MDA 2019 |

Appeal from the Judgment of Sentence Entered November 29, 2018
in the Court of Common Pleas of Huntingdon County
Criminal Division at No(s):  CP-31-CR-0000248-2017

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| :--- | :--- | :--- |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSHUA L HOLLABAUGH | : | |
| | : | |
| Appellant | : | No. 214 MDA 2019 |

Appeal from the Judgment of Sentence Entered November 29, 2018
in the Court of Common Pleas of Huntingdon County
Criminal Division at No(s):  CP-31-CR-0000249-2017

BEFORE:  STABILE, J., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:            **FILED AUGUST 20, 2020**

Joshua Lee Hollabaugh ("Hollabaugh") appeals from the judgments of sentence[1] imposed following his convictions of three counts each of indecent assault – complainant less than 13 years of age and statutory sexual assault; two counts of involuntary deviate sexual intercourse ("IDSI") with a child; and one count each of rape of a child, indecent assault – complainant less than 16 years of age, and IDSI with a person less than 16 years of age.[2]  We affirm.

_____

[1] Hollabaugh purports to appeal from the trial court's Order denying his Post-Sentence Motion.  However, an appeal properly lies from the judgment of sentence in a criminal case.  ***See Commonwealth v. W.H.M., Jr.***, 932 A.2d 155, 158 n.1 (Pa. Super. 2007).

[2] ***See*** 18 Pa.C.S.A. §§ 3126(a)(7), (8); 3122.1; 3123(a)(7), (b); 3121(c).

- 2 -

In 2017, Hollabaugh was charged, at four separate dockets, with various sexual offenses that he had committed against four minor females (the "victims"). In its Opinion, the trial court summarized the relevant facts underlying this appeal as follows:

1. [Hollabaugh] is an adult male who is deaf. He communicates through American Sign Language, written English, and physical gestures.

2. He was born on December 10, 1984.

3. [Hollabaugh's] mother, Rebecca Hollabaugh, provided babysitting services in her home in Mapleton Depot, Huntingdon County, Pennsylvania.

4. [Hollabaugh] resided with his parents during the time periods relevant to the events of this case.[3]

5. [Hollabaugh's] bedroom was located on the second floor of the home[,] at the top of the stairs.

6. [Hollabaugh] sexually assaulted the four victims in this case in his parents' home while Rebecca Hollabaugh was babysitting.

7. The four victims knew each other and were present at the Hollabaugh residence during overlapping periods of time.

8. Although [Hollabaugh] does not communicate verbally, he was able to communicate with the children in the home through physical gestures, written text on his Blackberry cellular telephone, and by Rebecca Hollabaugh interpreting his sign language to the children.

---

[3] The Criminal Informations alleged that the offenses occurred during the following time periods: January 1, 2001, to December 22, 2002 (Victim #3); January 1, 2006, to December 31, 2007 (Victim #2); January 1, 2008, to December 31, 2011 (Victim #4); and August 22, 2009, to August 22, 2011 (Victim #1).

9. Victim #1 was born [i]n August [] 2002.

10. Victim #1 lived in the Hollabaugh home for a period of six to 12 months when she was approximately six years old. Victim #1's mother was married to [Hollabaugh's] brother.

11. At the time of [Hollabaugh's] criminal conduct with Victim #1[,] she estimated her age as six[]years….

12. After Victim #1 and her family moved from the Hollabaugh home, Rebecca Hollabaugh continued to babysit Victim #1….

13. [Hollabaugh] lived in the Hollabaugh residence during the entire time Victim #1 resided in the home.

14. Victims #1, 2 and 4 would often voluntarily help [Hollabaugh] clean his bedroom.

15. While the children cleaned his bedroom, [Hollabaugh] was alone with them; Rebecca Hollabaugh remained downstairs.

16. When Victim #1 was approximately six (6) years old, [Hollabaugh] asked her and two other girls being babysat in the home to clean his bedroom.[FN]

---

[FN] The three girls referenced in this incident are Victim #1, Victim #2, and a third child, H.N., who was not named in the criminal [C]omplaint. Victims #1 and #2 testified to the presence of H.N. during the incident of abuse described above. H.N. testified at trial that she was in [Hollabaugh's] bedroom to help clean[,] but did not remember being sexually abused by [Hollabaugh].

---

17. [Hollabaugh] communicated this request by handing Victim #1 trash bags and a broom[,] and making hand gestures.

18. Victim #1, Victim #2, and H.N. followed [Hollabaugh] to his bedroom, where he shut and locked the door, then sat down in his desk chair.

19. [Hollabaugh] exposed his penis to the three girls as he sat in his chair.

20. [Hollabaugh] motioned for Victim #1 to approach his chair and when she did, [Hollabaugh] grabbed her hand and placed it on his penis, and instructed her to make an up and [down] motion with her hand.

21. [Hollabaugh] then grabbed the back of Victim #1's head and forced it down, thereby pushing his penis into her mouth.

22. Victim #2 was babysat by Rebecca Hollabaugh when she was four or five years old.

23. Victim #2 was born [i]n January [] 2000.

24. During the bedroom incident described above, [Hollabaugh] also grabbed Victim #2's head, pulled it down towards his lap, and inserted his penis into her mouth, then moved her head up and down.

25. When he released [Victim #2's] head, [Hollabaugh] took hold of her hand and placed it over his penis, also moving up and down.

26. Victim #3 was born [i]n November [] 1995.

27. Victim #3 was babysat by her grandmother during the summer months at her home across the street from the Hollabaughs. Victim #3 would often play with the children at the Hollabaughs' home during this time.

28. On one occasion, Victim #3 went into the residence to use the bathroom, which was located on the second floor, down the hallway from [Hollabaugh's] bedroom.

29. [Hollabaugh] stopped her in route to the bathroom and motioned for her to enter his bedroom, which she did.

30. [Hollabaugh] began rubbing Victim #3's leg[,] then grabbed her vagina over her clothes.

31. Victim #3 was able to push [Hollabaugh] away and escape to her grandmother's home.

32. Rebecca Hollabaugh babysat Victim #4 when she was approximately five years old[,] until she was 16 years old.

33. Victim #4 was born [i]n November [] 1996.

34. Victim #4 started smoking cigarettes when she was nine years old.

35. [Hollabaugh] would supply cigarettes to Victim #4 and would sometimes request she do things for him in exchange, such as perform sexual acts or clean his bedroom.

36. When she was between ten and twelve years old, [Hollabaugh] lured Victim #4 into his bedroom to show her something on his computer[,] then grabbed and fondled her breast on top of her clothing.

37. On a separate occasion, when Victim #4 was about twelve[ ]years[ ]old, [Hollabaugh] again lured her into his bedroom to show her something on his computer.

38. Upon entering the bedroom, Victim #4 asked [Hollabaugh] for a cigarette, which he agreed to in exchange for allowing him to feel her breast.

39. [Hollabuagh] squeezed her breast under her clothes[,] then gave Victim #4 a cigarette.

40. When she was approximately twelve or thirteen[]years[]old, [Hollabaugh] drove Victim #4 to a local convenience store to purchase cigarettes for herself.

41. Victim #4 asked for a cigarette[,] and [Hollabaugh] put up a finger to indicate that she must wait, then drove them to a cemetery[,] where he parked the vehicle.

42. [Hollabaugh] typed a message on his cell phone offering her a cigarette if she first put her mouth on his penis.

43. Victim #4 leaned over from the passenger seat and placed her mouth on his penis for a short time, after which [Hollabaugh] gave her a cigarette.

44. Victim #1 first disclosed the abuse to law enforcement and provided the names of Victims #2 and #3 to the Pennsylvania State Police Trooper.

45. Victim #3 provided law enforcement with the name of Victim #4.

Trial Court Opinion, 4/8/19, at 2-6 (footnote in original; footnote added).

On July 10, 2017, Hollabaugh filed an Omnibus Pre-Trial Motion, seeking to hire a private detective to assist with case preparation. The trial court granted the Motion, and directed that the total expense must not exceed $750.

On August 1, 2017, The Commonwealth filed a Motion for Joinder of the four cases for trial, asserting that all of the offenses charged were based on the same acts or transactions. Following a hearing, the trial court granted the Motion for Joinder, and joined the four cases for trial.

This Court previously summarized what next transpired as follows:

Prior to trial, the Commonwealth filed a [N]otice that it intended to call Ann Cook ("Cook"), a licensed master social worker, as an expert witness at trial. *Cf.* 42 Pa.C.S.A. § 5920(b)(1) (permitting expert testimony "that will assist the trier of fact in understanding the dynamics of sexual violence, victim responses to sexual violence[,] and the impact of sexual violence on victims during and after being assaulted"). Jury selection was conducted on November 6, 2017[,] and trial was scheduled to commence on November 20, 2017.

On the evening of November 16, 2017, Cook contacted the attorney representing the Commonwealth and advised that she had to undergo emergency surgery and would not be able to testify at trial the following week. The Commonwealth obtained another expert witness to testify in place of Cook. [Hollabaugh] objected to this late substitution and the trial court refused to permit the substitute expert to testify. The Commonwealth moved for a continuance[,] and the trial court denied the [M]otion. The Commonwealth immediately appealed that decision.

*Commonwealth v. Hollabaugh*, 194 A.3d 655 (Pa. Super. 2018) (unpublished memorandum at 2-3) (footnote omitted). On appeal, this Court

concluded that the prejudice the Commonwealth would suffer if Cook were unable to testify at trial outweighed any prejudice to Hollabaugh. ***See id.*** (unpublished memorandum at 6-9). This Court therefore reversed the trial court's Order denying the Motion to continue, and remanded the case to the trial court. ***Id.*** (unpublished memorandum at 9).

The trial court entered an Order on July 10, 2018, continuing the trial. The trial court thereafter rescheduled jury selection and the trial. The Commonwealth filed a Notice of its intention to introduce the expert testimony of Carol Hughes ("Hughes"), a licensed psychologist, regarding child sexual abuse victimology and offender dynamics.[4]

On August 29, 2018, a jury convicted Hollabaugh of the above-mentioned crimes.[5] The trial court deferred sentencing and ordered preparation of a pre-sentence investigation report. Additionally, the court directed Hollabaugh to undergo an evaluation by the Sexual Offender Assessment Board. On November 29, 2018, the trial court sentenced Hollabaugh to an aggregate term of 26½ to 53 years in prison, with credit for

---

[4] Hughes subsequently testified at trial.

[5] The Sentencing Orders at Nos. 247-2017 and 248-2017 each indicate a finding of guilt with no further penalty for the offense of sexual assault, ***see*** 18 Pa.C.S.A. § 3124.1. However, the Criminal Informations did not charge Hollabaugh with sexual assault, and the offense of sexual assault does not appear on the jury's verdict sheet. Our review of the trial transcripts likewise reveals that the trial court did not provide a jury instruction regarding sexual assault.

time served, plus fines and the costs of prosecution. The trial court also informed Hollabaugh that he would be subject to lifetime registration under the Sexual Offenders Registration and Notification Act, 42 Pa.C.S.A. §§ 9799.10-9799.41. On December 10, 2018, Hollabaugh filed a Post-Sentence Motion, challenging the weight of the evidence supporting his convictions. The trial court conducted a hearing, after which it denied Hollabaugh's Post-Sentence Motion.

Hollabaugh filed timely Notices of Appeal, one at each docket number, with each Notice identifying all four docket numbers.[6] The trial court ordered

---

[6] On February 15, 2019, this Court, *sua sponte*, consolidated Hollabaugh's appeals. On the same date, this Court issued an Order directing Hollabaugh to show cause why his appeals should not be quashed in light of **Commonwealth v. Walker**, 185 A.3d 969, 977 (Pa. 2018) (stating that "when a single order resolves issues arising on more than one lower court docket, separate notices of appeal must be filed. The failure to do so will result in quashal of the appeal." (citing Pa.R.A.P. 341)). **See also Commonwealth v. Creese**, 216 A.3d 1142, 1144 (Pa. Super. 2019) (quashing an appeal, pursuant to **Walker**, where the appellant filed a notice of appeal at each docket number, but each notice of appeal contained multiple docket numbers). Hollabaugh filed a Response, stating that he had filed a separate Notice of Appeal at each docket number. This Court subsequently discharged the show-cause Order, referring the issue to the merits panel. Recently, this Court, sitting *en banc*, held that where separate notices of appeal are filed at each of multiple docket numbers, the inclusion of multiple docket numbers on each notice of appeal **does not** invalidate the notices of appeal. **See Commonwealth v. Johnson**, 2020 PA Super 164, at *4 (Pa. Super. filed July 9, 2020) (*en banc*); **Commonwealth v. Larkin**, 2020 PA Super 163, at *3 (Pa. Super. filed July 9, 2020) (*en banc*). In light of this Court's decisions in **Johnson** and **Larkin**, we decline to quash Hollabaugh's appeal.

- 9 -

to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and Hollabaugh timely complied.

On appeal, Hollabaugh raises the following questions for our review:

1. Did the trial court err when it consolidated four separate cases, with four separate complaining witnesses, over four separate time periods for trial?

2. Were the guilty verdicts against the weight of the evidence given the age of the complaint, the age of the complainants, the lack of corroborating evidence and the contradictory evidence presented by the Commonwealth?

Brief for Appellant at 7.

In his first claim, Hollabaugh argues that the trial court abused its discretion in joining the cases for trial. *See id.* at 22-43. Hollabaugh claims that evidence supporting each of the charged offenses would not be permissible in separate trials for the other offenses. *Id.* at 25-26; 26 (stating that "[t]he identity of the perpetrator is not at issue since there was prior contact between [Hollabaugh] and the victims."). According to Hollabaugh, the time span between the first and last alleged incidents of sexual assault is too significant to be considered part of a common scheme. *Id.* at 27-29. Hollabaugh also contends that the Commonwealth did not establish a distinctive habit or pattern of action linking the events. *Id.* at 29. However, Hollabaugh acknowledges that Nos. 246-2017 and 247-2017 were properly consolidated, because the victims served as eyewitnesses to each other's assault. *Id.* at 30. Hollabaugh specifically takes issue with the consolidation of Victim #3's case with the others, because he claims that he was still a

- 10 -

juvenile during the alleged offense dates. *Id.* at 31-32. Further, Hollabaugh

asserts that there was no common scheme or plan, as the testimony indicates

that the victims entered his room for different purposes (*i.e.*, to clean

Hollabaugh's room and to look at something on his computer). *Id.* at 32-34.

"[Hollabaugh] believes the jury used the evidence of one of the offenses to

infer a criminal disposition[,] and on the basis of that inference, convict

[Hollabaugh] of the other offenses." *Id.* at 41.

We adhere to the following standard of review:

> Joinder and severance of separate indictments for trial is a discretionary function of the trial court; consequently, the trial court's decision is subject to review for abuse of that discretion. Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. Consequently, an abuse of discretion consists not merely of errors in judgment by the trial court, but instead contemplates action unsupported by the evidence, at odds with governing law, or arising from improper motives personal to the judge. The critical consideration is whether the appellant was prejudiced by the trial court's decision…. The appellant bears the burden of establishing such prejudice.

*Commonwealth v. Brookins*, 10 A.3d 1251, 1255 (Pa. Super. 2010)

(citations, quotation marks and brackets omitted).

Pennsylvania Rule of Criminal Procedure 582 governs the joinder of

offenses, and provides, in relevant part, as follows:

> (1) Offenses charged in separate indictments or informations may be tried together if:
>
> > (a) the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion; or

J-A25031-19

> (b) the offenses charged are based on the same act or
> transaction.

Pa.R.Crim.P. 582(A)(1); ***see also Commonwealth v. Serrano***, 61 A.3d 279,

285 (Pa. Super. 2013).  However, "[t]he court may order separate trials of

offenses or defendants … if it appears that any party may be prejudiced by

offenses or defendants being tried together."  Pa.R.Crim.P. 583; ***see also***

***Commonwealth v. Ferguson***, 107 A.3d 206, 210 (Pa. Super. 2015) (stating

that "[t]he prejudice of which Rule [583] speaks is … that which would occur

if the evidence tended to convict [the] appellant only by showing his

propensity to commit crimes, or because the jury was incapable of separating

the evidence or could not avoid cumulating the evidence.").

In its Opinion, the trial court addressed this claim as follows:

> In this case, the testimony from each victim would have
> been admissible in the separate trials involving the other victims.
> Three of the victims were available to [Hollabaugh] due to the
> babysitting service provided by [Hollabaugh's] mother, and the
> other was a frequent visitor[,] as she was friends with the children
> being babysat.  The first three victims described incidents of abuse
> in which all three victims were sexually assaulted in the same
> bedroom, around the same time.  Victim #4 also was lured into
> the same bedroom under the guise of cleaning the room.
> Although [the pattern of abuse concerning Victim #4] escalated
> and continued beyond [Hollabaugh's] bedroom, her testimony still
> was relevant to show [Hollabaugh's] opportunity and scheme.
>
> The evidence from each witness makes the facts serving as
> the basis of the crimes more probable and credible by
> corroborating details such as identifying where [Hollabaugh's]
> room was located in the home, placing others in [Hollabaugh's]
> bedroom to clean, and, in some instances, witnessing the abuse
> perpetrated by [Hollabaugh].  This evidence is compelling and

- 12 -

admissible as required by [Pa.R.E.] 404(b)(2)[7] to prove [Hollabaugh] had the opportunity to commit these offenses, and it was his plan or scheme to lure the children into his bedroom under the guise of helping him clean.

Furthermore, the Pennsylvania Supreme Court has repeatedly accepted the admission of other crimes under the common law *res gestae* or "complete story" rationale. ***Commonwealth v. Brown***, 52 A.3d 320[, 326] (Pa. Super. 2012) …. The Supreme Court has stated[,]

> the "*res gestae*" exception to the general proscription against evidence of other crimes, is also known as the "complete story" rationale, *i.e.*, evidence of other criminal acts is admissible "to complete the story of the crime on trial by proving its immediate context of happenings near in time and place."

***Commonwealth v. Lark***, 543 A.2d 491[, 303] (Pa. 1988) [(citations omitted)].

The evidence presented from each victim is admissible to provide the "complete story" of how [Hollabaugh] abused these young girls. This evidence is impossible to separate. The single incidents of abuse cannot be told without involving the episodes of abuse that happened at the same time and place.

….

[Hollabaugh] has not established prejudice. The evidence of each offense was not complicated, was methodically presented by the Commonwealth, and could be easily separated by the jurors. Additionally, the testimony of each victim was alone sufficient to form the basis of the convictions. Lastly, the only embarrassment suffered at trial was by the victims[,] who had to recount the details of their sexual abuse to a courtroom full of strangers. Any

---

[7] Pennsylvania Rule of Evidence 404(b)(2) provides that evidence of crimes, wrongs or other acts "may be admissible for … proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case[,] this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice." Pa.R.E. 404(b)(2).

argument of prejudice is greatly outweighed by the interest of judicial economy, and more importantly, the victims testifying in multiple trials if the trials had been separated.

Trial Court Opinion, 4/8/19, at 7-9 (footnote added).

The trial court's determination is supported by the evidence. As Hollabaugh admits, Nos. 246-2017 and 247-2017 involved an event for which two victims would serve as eyewitnesses for one another, and therefore, were properly consolidated. Regarding the remaining cases, we discern no abuse of the trial court's discretion in its determination that evidence of one offense would be admissible in a trial for the other offenses to establish a common plan or scheme, and to provide the jury with a "complete picture" of Hollabaugh's offenses. Additionally, the evidence was easily separable by the jury, as the crimes occurred on different dates and involved different victims. *See Ferguson*, 107 A.3d at 211 (stating that "[w]here a trial concerns distinct criminal offenses that are distinguishable in time, space and the characters involved, a jury is capable of separating the evidence.") (citation omitted). Moreover, Hollabaugh has not established undue prejudice resulting from the consolidation of the four cases for trial. *See Brookins*, *supra*; *Commonwealth v. Judd*, 897 A.2d 1224, 1232 (Pa. Super. 2006) (concluding that appellant was not prejudiced by the trial court's consolidation of his two cases, where the evidence "constituted an ongoing course of extremely similar sexual abuse against two youthful victims," and was

separable by the jury). Accordingly, the trial court did not abuse its discretion in consolidating the Criminal Informations for trial.

In his second claim, Hollabaugh argues that the verdict was against the weight of the evidence. Brief for Appellant at 44. Specifically, Hollabaugh cites testimony of Victim #1 and Victim #2, and claims that each victim's estimation of their age at the time of the assault could not simultaneously be correct. *Id.* at 47-52; *see also id.* at 48-49 (pointing out that Victim #1 testified that she was approximately 6 years old at the time of the assault, and Victim #2 testified that she was 4 or 5 at the time; however, Victim #1 is two years older than Victim #2). Hollabaugh also notes the absence of corroborating testimony by H.N. regarding the assault, which both Victim #1 and Victim #2 claimed H.N. had witnessed. *Id.* at 52-55. Hollabaugh therefore claims that "the scales of justice totter on her pedestal and shocks one[']s sense of justice." *Id.* at 57. Additionally, Hollabaugh disputes Victim #4's testimony that he had lured her into his room to show her something on the computer, and asserts that Victim #4's testimony is inaccurate because he did not have a computer in his bedroom. *Id.* at 57-58. Finally, Hollabaugh alleges that the trial court refused to grant him a new trial due to the costs and time associated with providing three interpreters for his jury trial. *Id.* at 60-61.

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an

appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. McClelland*, 204 A.3d 436, 447 (Pa. Super. 2019) (citation omitted). "To successfully challenge the weight of the evidence, a defendant must prove the evidence is so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Commonwealth v. Windslowe*, 158 A.3d 698, 712 (Pa. Super. 2017).

In its Opinion, the trial court fully addressed Hollabaugh's claim, and concluded that it lacks merit. *See* Trial Court Opinion, 4/8/19, at 10-13. The trial court stated, *inter alia*, as follows:

> [] Hughes, a licensed psychologist, testified at trial about behavior typically displayed by victims of sexual abuse. She discussed several of the factors affecting disclosure such as the age of the victim, relationship between the victim and perpetrator, type of abuse, and family dynamics[,] among others. [] Hughes explained that not all victims respond in the same way, however[,] regarding the issue of when a victim reports abuse, delayed disclosure (reporting the abuse at some point in the future and not immediately), is the more common[,] and prompt report (disclosing the abuse very soon after) is not as common. …
>
> Additionally, the age of the victim is a factor as to when the abuse is reported, with younger children sometimes not having the appropriate language to describe what is happening or lacking the understanding that the behavior is wrong. In this case, Victim #1 was the first to disclose the abuse, several years after her contact with [Hollabaugh]. The other victims disclosed their abuse to law enforcement only after being contacted by [the Pennsylvania State Trooper].

*Id.* at 11.

Additionally, concerning Hollabaugh's arguments concerning apparent discrepancies between the victims' estimations of the dates of the offenses, the trial court stated as follows:

> The dates were not essential elements of the cases against [Hollabaugh]. The date ranges listed in the [C]riminal [I]nformations were more than sufficient to apprise him of the allegations, and [Hollabaugh] had the opportunity to refute them at trial. It is understandable that the dates do not align perfectly[,] given the fact that these are approximations from four victims about abuse that occurred almost a decade ago when they were very young. It is less believable [that] the victims would pinpoint the same time given the variables previously described. Although the exact dates were not proven at trial, nor did they need to be, the timeframes were compatible and not contradictory.

*Id.* at 11-12. Moreover, the trial court specifically credited the testimony of all four victims, and we may not reconsider those credibility determinations on appeal. *See id.* at 10; *Commonwealth v. Forbes*, 867 A.2d 1268, 1273-73 (Pa. Super. 2005) (stating that "[t]he weight of the evidence is exclusively for the finder of fact[,] who is free to believe all, part, or none of the evidence and to determine the credibility of witnesses. An appellate court cannot substitute its judgment for that of the finder of fact."); *see also generally Commonwealth v. Diaz*, 152 A.3d 1040, 1047 (Pa. Super. 2016) (stating that "the uncorroborated testimony of a sexual assault victim, if believed by the trier of fact, is sufficient to convict a defendant[.]" (citation omitted)). Because the evidence supports the jury's verdict, and we discern no abuse of

discretion by the trial court in evaluating Hollabaugh's weight challenge, we afford him no relief on this claim.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/20/2020