J-S07041-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                                                     :            PENNSYLVANIA
                                                     :
          v.                                 :
                                                   :
                                                   :
RICKEY CHARLES WILSON            : 
                                                   :
             Appellant                 :      No. 1135 MDA 2023

Appeal from the PCRA Order Entered July 31, 2023
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0003807-2014

BEFORE: NICHOLS, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY KING, J.:           **FILED: APRIL 24, 2025**

Appellant, Rickey Charles Wilson, appeals *pro se* from the order entered in the Berks County Court of Common Pleas, which denied his petition filed pursuant to the Post Conviction Relief Act.[1] We affirm.

The relevant facts and procedural history of this case are as follows. In 2014, Appellant was living with his paramour, Janette Oakley, and her five-year-old daughter, K.C. In July 2014, K.C. reported to her maternal grandmother, Lauren Carpenter, that Appellant had sexually abused her. Ms. Carpenter took K.C. to the hospital to be evaluated and the matter was reported to the police and the Berks County Children and Youth Services ("CYS"). The Commonwealth charged Appellant with rape, involuntary deviate

_____

[1] 42 Pa.C.S.A. §§ 9541-9546.

sexual intercourse, aggravated indecent assault, intimidation of witnesses or victims, indecent assault, endangering the welfare of children, corruption of minors and indecent exposure.

On August 17, 2015, the trial court conducted a hearing to determine whether K.C. was competent to testify. After questioning K.C., the court determined that K.C. was competent to testify. The court specifically found that K.C. was intelligent, understood the difference between a truth and a lie and responded appropriately and accurately to questions about her life. (**See** N.T. Pretrial Hearing, 8/27/15, at 14). A jury trial commenced on May 2, 2016. K.C. testified that Appellant touched her "inappropriate parts" with his fingers and his tongue. She identified where Appellant touched her body by circling the vaginal area on a paper depicting a diagram of a girl's body. On cross-examination, K.C. stated that she spoke about the abuse with the assistant district attorney ("ADA") several times. On recross, K.C. affirmed that the ADA did not tell her what to say while testifying.

Ms. Carpenter testified that in July of 2014, she was watching K.C. while Ms. Oakley was working. She was giving K.C. a bath when K.C. spontaneously stated that Appellant kisses her now. Ms. Carpenter did not inquire further until K.C. repeated that Appellant kisses her. Ms. Carpenter asked K.C. what she meant by that and K.C. told her that Appellant pushes her back on the bed. When Ms. Carpenter asked if there was more, K.C. told Ms. Carpenter that she could not tell her anything else because she was afraid Ms. Carpenter

would get really mad at her. After reassuring K.C. that she would not get mad at her, Ms. Carpenter let K.C. continue to play in the bath. After a short period of time, K.C. stated, unprompted, that Appellant licked her "heinie." Ms. Carpenter testified that K.C. used the term "heinie" to refer to her vaginal area. When Ms. Carpenter asked K.C. if there was anything else, K.C. stated that Appellant threw up out of his "heinie." After this, Ms. Carpenter took K.C. to the hospital to be evaluated.

Susan Bamford, a caseworker at CYS testified that she conducted a minimal fact interview with K.C. on July 7, 2014. A minimal fact interview consists of a few questions to ascertain the basic facts of an allegation. Ms. Bamford testified that if a child makes any sort of disclosure of abuse during the minimal fact interview, she refers the child to the Children's Alliance Center to undergo a forensic interview. Ms. Bamford spoke with K.C. without any other adults present. During the interview, K.C. stated that Appellant touched her private parts and pointed to her vaginal area.

Appellant and the Commonwealth stipulated to the following:

> If called to testify, Kelsey Gift would testify that she is employed by the Berks County Children's Alliance Center as a forensic interviewer. She would further testify that it is her job to interview children who are either the victim of abuse or who have witnessed a traumatic event. This is done in a child friendly atmosphere. She would testify that she has been trained in two separate nationally recognized protocols for interviewing children and uses those methods when she interviews children. She would further testify that on July 11th, 2014, she interviewed [K.C.] at the Children's Alliance Center and that interview was audibly and visually recorded. She [would] testify that Commonwealth's Exhibit

2 is a copy of the interview she conducted on July 11, 2014.

Ms. Gift would further testify that in the course of the July 11, 2014 interview, she had [K.C.] identify parts of the male and female anatomy using two separate diagrams. She would identify Commonwealth's Exhibit 3 and Commonwealth Exhibit 4 as the diagrams she used.

(N.T. Trial, 5/2/16, at 145-46). The Commonwealth played the video recording of Ms. Gift's interview with K.C. A portion of the video, lasting approximately 10 minutes, was not played for the jury. During this portion of the video, Ms. Gift briefly paused the interview and left the room. During the interview, K.C. told Ms. Gift that Appellant touched her "heinie." She further stated that white lotion came out of Appellant's "heinie." The Commonwealth further moved into evidence Commonwealth Exhibits 3 and 4. Exhibit 3 depicts a diagram of a girl's body and shows that K.C. identified the vaginal area as the "heinie." Exhibit 4 depicts a diagram of a boy's body and shows that K.C. identified the penis as the "heinie."

Following all testimony, the court granted Appellant's motion for judgment of acquittal on the rape charge. Additionally, the Commonwealth withdrew the intimidation of witnesses or victims charge. The jury convicted Appellant of all other charges. On August 11, 2016, the court sentenced Appellant to an aggregate term of 10 years and 3 months to 48 years of incarceration. This Court affirmed the judgment of sentence on May 3, 2017, and our Supreme Court denied Appellant's petition for allowance of appeal on

March 16, 2021.[2] **See Commonwealth v. Wilson**, 170 A.3d 1187 (Pa.Super. 2017), *appeal denied*, 666 Pa. 107, 250 A.3d 1161 (2021).

On July 15, 2021, Appellant timely filed a *pro se* PCRA petition. The court appointed counsel on January 13, 2022. PCRA counsel filed a **Turner**/**Finley**[3] "no merit" letter and a motion to withdraw as counsel on September 19, 2022. On January 24, 2023, the court denied PCRA counsel's request to withdraw and scheduled an evidentiary hearing limited to addressing Appellant's claim that trial counsel provided ineffective assistance during plea negotiations. The court conducted a hearing on March 30, 2023. On May 16, 2023, the court permitted PCRA counsel to withdraw and filed a notice of intent to dismiss Appellant's PCRA petition pursuant to Pa.R.Crim.P. 907 regarding the remaining claims. Appellant filed a *pro se* response to the Rule 907 notice on June 6, 2023. On July 31, 2023, the court denied PCRA relief. Appellant filed a timely notice of appeal on August 10, 2023. On August 24, 2023, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellant timely complied on September 11, 2023.

---

[2] On March 9, 2018, Appellant filed a PCRA petition, asserting that he was provided ineffective assistance of counsel because his attorney failed to file a requested petition for allowance of appeal to our Supreme Court. On December 3, 2020, the trial court reinstated Appellant's right to file a petition for allowance of appeal *nunc pro tunc* and Appellant subsequently filed the petition on December 29, 2020.

[3] **Commonwealth v. Turner**, 518 Pa. 491, 544 A.2d 927 (1988); **Commonwealth v. Finley**, 550 A.2d 213 (Pa.Super. 1988) (*en banc*).

Appellant raises the following issue for our review:

> Trial counsel was ineffective due to failure to bring in a taint analysis of the forensic interview by failing to request a taint hearing.

(Appellant's Brief at 2).

Appellant argues that there was evidence that K.C.'s recollection of the events at issue was tainted by the suggestive questioning techniques employed by those who interviewed her. Appellant asserts that K.C. was subject to repetitive questioning by multiple adults in positions of power. Appellant contends that Ms. Gift left the room in the middle of questioning K.C., conferred with law enforcement, and resumed the interview with more suggestive and leading questions. Appellant insists that trial counsel should have presented evidence of taint at K.C.'s competency hearing. Appellant avers that trial counsel was ineffective for failing to assert that K.C.'s testimony was tainted and failing to request a hearing to determine the extent to which K.C.'s statements were influenced by those who interviewed her. Appellant concludes that the PCRA court erred in denying his ineffective assistance of counsel claim on this ground, and this Court must grant relief. We disagree.

"Our standard of review of the denial of a PCRA petition is limited to examining whether the evidence of record supports the court's determination and whether its decision is free of legal error." *Commonwealth v. Beatty*, 207 A.3d 957, 960-61 (Pa.Super. 2019), *appeal denied*, 655 Pa. 482, 218

A.3d 850 (2019). This Court grants great deference to the factual findings of the PCRA court if the record contains any support for those findings. **Commonwealth v. Howard**, 249 A.3d 1229 (Pa.Super. 2021). "[W]e review the court's legal conclusions *de novo*." **Commonwealth v. Prater**, 256 A.3d 1274, 1282 (Pa.Super. 2021).

"Counsel is presumed to have rendered effective assistance." **Commonwealth v. Hopkins**, 231 A.3d 855, 871 (Pa.Super. 2020), *appeal denied*, 663 Pa. 418, 242 A.3d 908 (2020).

> [T]o establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

**Commonwealth v. Sandusky**, 203 A.3d 1033, 1043 (Pa.Super. 2019), *appeal denied*, 654 Pa. 568, 216 A.3d 1029 (2019) (internal citations and quotation marks omitted). The failure to satisfy any prong of the test for ineffectiveness will cause the claim to fail. **Commonwealth v. Chmiel**, 612 Pa. 333, 30 A.3d 1111 (2011).

"The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit[.]" **Commonwealth**

***v. Smith***, 167 A.3d 782, 788 (Pa.Super. 2017), *appeal denied*, 645 Pa. 175, 179 A.3d 6 (2018) (quoting ***Commonwealth v. Pierce***, 537 Pa. 514, 524, 645 A.2d 189, 194 (1994)). "Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim." ***Commonwealth v. Poplawski***, 852 A.2d 323, 327 (Pa.Super. 2004) (quoting ***Commonwealth v. Geathers***, 847 A.2d 730, 733 (Pa.Super. 2004)).

"[P]retrial exploration of taint … is necessary in those cases where there is some evidence that improper interview techniques, suggestive questioning, vilification of the accused and interviewer bias may have influenced a child witness to such a degree that the proffered testimony may be irreparably compromised." ***Commonwealth v. Delbridge***, 578 Pa. 641, 661, 855 A.2d 27, 39 (2003). "In order to trigger an investigation of competency on the issue of taint, the moving party must show some evidence of taint." ***Id.*** at 664, 855 A.2d at 40. "Once the moving party comes forward with some evidence of taint, the court must expand the scope of the competency hearing to investigate that specific question." ***Commonwealth v. Judd***, 897 A.2d 1224, 1229 (Pa.Super. 2006), *appeal denied*, 590 Pa. 675, 912 A.2d 1291 (2006) (citation omitted). "The party alleging taint bears the burden of production of 'some evidence' of taint as well as the ultimate burden of persuasion to show taint by clear and convincing evidence after any hearing on the matter." ***Id.*** "When determining whether a defendant has presented 'some evidence' of taint, the court must consider the totality of the

circumstances surrounding the child's allegations." *Id.*

> Some of the factors that are relevant in this analysis are: (1) the age of the child; (2) the existence of a motive hostile to the defendant on the part of the child's primary custodian; (3) the possibility that the child's primary custodian is unusually likely to read abuse into normal interaction; (4) whether the child was subjected to repeated interviews by various adults in positions of authority; (5) whether an interested adult was present during the course of any interviews; and (6) the existence of independent evidence regarding the interview techniques employed.

*Id.*

Instantly, K.C. was five years old at the time that she was interviewed. In support of his allegation of taint, Appellant makes conclusory assertions that the adults who questioned K.C. asked suggestive and leading questions. Notably, however, Appellant fails to cite a single example of such a question. Our review of the record demonstrates the opposite. Ms. Carpenter testified that K.C. began telling her about the abuse unprompted. Ms. Carpenter further testified that she did not ask pointed follow-up questions but merely reassured K.C. that she could tell Ms. Carpenter what happened and allowed K.C. to continue at her own pace. Ms. Bamford testified that she conducted a minimal fact interview which consisted of only a few questions to ascertain the basic facts of the disclosure. The parties further stipulated that Ms. Gift would have testified that she was trained in nationally recognized protocols for interviewing children, and she employed those protocols when interviewing

K.C.[4]

Significantly, K.C.'s statements about the abuse remained largely consistent, from her initial disclosure to Ms. Carpenter, through her interviews with various professionals, to her testimony at trial. Considering the totality of the circumstances, there is **no** evidence of record to support Appellant's assertion that K.C.'s testimony was tainted due to repetitive, leading and suggestive questioning. *See Delbridge, supra*; *Judd, supra*. Appellant has cited no other factors to suggest taint in this case, such as a hostile motive against Appellant or a caregiver's likeliness to allege abuse in a normal interaction. *See id.* As such, Appellant has failed to establish that there is arguable merit to his claim and counsel cannot be held ineffective for failing to pursue a baseless claim. *See Poplawski, supra*. Therefore, we discern no error in the PCRA court's determination that Appellant failed to establish his ineffective assistance of counsel claim. *See Beatty, supra*. Accordingly, we affirm.

Order affirmed.

_____

[4] Although Appellant claims that Ms. Gift paused her interview with K.C., conferred with law enforcement and resumed the interview with leading, suggestive questions, Appellant fails to support this assertion with citations to the record. Upon our review of the record, we see no support for Appellant's claim. It is unclear whether Appellant has any basis for this assertion or if he is merely speculating as to Ms. Gift's actions when she took a brief break during her interview with K.C. Consequently, Appellant has failed to put forth any evidence to demonstrate that Ms. Gift used improper questioning methods that could have tainted K.C.'s testimony.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 04/24/2025