J-S31039-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
  :  PENNSYLVANIA
  :
  v.  :
  :
  :
  :
ALAN KUSHNER  :
  :
  Appellant  : No. 120 EDA 2021

Appeal from the PCRA Order Entered December 3, 2020
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-CR-0009814-2008

BEFORE:  STABILE, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:  **FILED NOVEMBER 03, 2021**

Alan Kushner (Kushner) appeals from the order entered in the Court of Common Pleas of Montgomery County (PCRA court) dismissing his seventh petition filed pursuant to the Post-Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546 as untimely.  Kushner contends he met the newly-discovered facts exception to the PCRA's time-bar based on an interview his private investigator conducted with Commonwealth witness Weldon Gary (Gary) in October 2019.  We affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

**I.**

**A.**

This case arises from Kushner's attempt to hire another individual to kill his then-wife Sari Kushner (Wife)[1] in May 2008. The couple had married in 1976 and resided together with their two sons. Kushner is a chiropractor and he operated an office in Philadelphia County. After years of marital disharmony, Wife initiated divorce proceedings in January 2006. During the pendency of the proceedings, Wife was shot in the driveway of her home after she returned from a museum event. The bullet was fired from behind a row of hedges next to the driveway and it went completely through her wrist. Wife immediately drove herself to a nearby firehouse for assistance and she was taken by ambulance to a hospital for surgery. Wife indicated to police that she could think of no one who wanted to harm her other than Kushner.

The police investigation revealed that Kushner had dinner at a restaurant with his father until approximately 8:30 p.m. on the night of the shooting and he then went to his apartment. No arrests were made immediately following the shooting and the gunman has never been identified.

Kushner was arrested in October 2008 after police executed search warrants on his apartment and chiropractic office. He was charged with attempted murder, solicitation to commit murder and conspiracy to commit

---

[1] Wife is also referred to as "Sarran" in the record.

murder. At his July 2009 trial, the jury heard testimony from several witnesses, including Gary, who had been a regular patient of Kushner's. Gary was an uncooperative witness and the Commonwealth secured a material witness warrant to ensure his attendance at trial.

Gary testified that while he was receiving treatment for a back injury in May 2008, Kushner began discussing his pending divorce. Kushner was aware that Gary had been incarcerated in the past for domestic violence and told Gary he wanted to "get rid of his wife." (N.T. Trial, 7/27/09, at 122). Gary ended the discussion, but averred that Kushner revived it during a July 2008 session and Gary declined to discuss the matter. When Kushner raised it again, Gary asked Kushner how much he wanted to spend and Kushner responded, "Whatever it takes." (*Id.* at 123). Kushner agreed to Gary's suggested $20,000 and gave him a $1,000 cash down payment, as well as directions to Wife's home and a description of her vehicle. Although Gary accepted the down payment, he claimed he never had any intention of carrying out the killing and that he ripped up Wife's address. (*See id.* at 126, 128). On direct examination by the Commonwealth, he testified:

> Q. Did you ever have any intention of actually hurting Mrs. Kushner?
>
> A. No, I did not. I don't even know what she look like. . . . I don't even know what she look like. I never had no intention to hurt nobody.

(*Id.* at 128).

On cross-examination by defense counsel, Gary testified:

- 3 -

Q. Okay. You never even had an intention to go to Montgomery County and do anything; right?

A. That's correct.

Q. You knew that you didn't do anything wrong in Montgomery County?

A. That's correct.

(*Id.* at 139-40). In the next few weeks, Kushner asked Gary during office visits why he had not completed the task. Gary then discontinued treatment.

The jury found Kushner guilty of solicitation to commit murder and returned verdicts of not guilty on the remaining charges. On October 23, 2009, the trial court sentenced Kushner to 7½ to 20 years' incarceration. On December 8, 2010, we affirmed his judgment of sentence. (*See Commonwealth v. Kushner*, 23 A.3d 573 (Pa. Super. 2010)) (unpublished memorandum). The Pennsylvania Supreme Court denied his petition for allowance of appeal on October 13, 2011. (*See Commonwealth v. Kushner*, 30 A.3d 487 (Pa. 2011)). Kushner then unsuccessfully litigated several PCRA petitions.

**B.**

Kushner filed the instant counseled PCRA petition on July 21, 2020. He acknowledges that his petition is untimely and bases his newly-discovered facts claim on a telephone interview private investigator Richard Strohm (Strohm) conducted with Gary in October 2019. Strohm's report provides:

- 4 -

Mr. Gary informed us that he didn't know anything about an affidavit.[2] After reading the affidavit to him, he stated that it was false and he never signed any such thing. He also stated that Alan Kushner paid him one thousand dollars to kill his wife, but he had no intentions on killing her and **told him that from the beginning**. He further stated that he wasn't the only person Alan Kushner asked to kill his wife. He had been going around asking others before he asked him to do it. Furthermore, he never received $1000 until after his wife had already been shot. In closing, Mr. Gary stated that he never wanted to get involved in this situation and that he never went to the police on his own free will. He only did it because he was threatened by the detectives, who told him that he would be going to jail for 2 to 5 years, if he didn't testify against Alan Kushner.

---

[2] Kushner filed his sixth PCRA petition based upon a notarized affidavit, purportedly signed by Gary. The PCRA court held a hearing on the matter and determined that the affidavit was fraudulent. This document read as follows:

My name is Weldon Gary an [sic] I would like to tell the Court that I lied to the Philadelphia Police and the prosecutor about Mr. Kushner hiring me to kill his wife. I am coming forward now with this information because my conscience is really weighing on me. I have changed my life an [sic] I am a devoted Christian now. Mr. Kushner never paid me any money or gave me any type of gifts for doing such a crime. I would like to go on record and tell anybody who has a concern with Mr. Kushner's legal matters or anyone representing him with his case that I, Weldon Gary did not take a contract to kill his ex-wife or do any harm to no one for money or gifts I am coming forward with this statement, to right my wrongs that I have did and to make myself a better person and to do what's right by Mr. Kushner. I would like the Court to know that no one has made me come forward or no one has offered me any monies or gifts for my changing my statement. I just want to do what's right so that I can move forward with my life. I can't move on with my life knowing I put a man in jail for nothing. I lied on Mr. Kushner an [sic] I would like to make this right for me. I am living a new life for God an [sic] he has forgave [sic] me for my sins, so I must do the right thing and tell the truth for Mr. Kushner.

(PCRA Petition, 7/21/20, at Paragraph 18).

(PCRA Petition, 7/21/20, at Paragraph 22) (emphasis original). Kushner characterizes this interview as "Gary's recantation to investigator Strohm" and argues that it "is critical evidence that essentially should lead to the grant of a new trial under the newly discovered facts exception." (*Id.* at Paragraph 41).

The PCRA court issued Rule 907 notice to dismiss the petition without a hearing. *See* Pa.R.Crim.P. 907(1). On December 3, 2020, the PCRA court dismissed the petition as untimely. In doing so, it explained that Kushner did not establish applicability of the newly-discovered facts exception to the PCRA time-bar with regard to Strohm's report on his interview with Gary. It explained that the "instant seventh petition amounts to nothing more than a patchwork regurgitation of previously litigated and meritless claims." (PCRA Court Opinion, 3/15/21, at 11). Kushner timely appealed. He and the PCRA court complied with Rule 1925. *See* Pa.R.A.P. 1925(a)-(b).

## II.

### A.

Before considering the merits of Kushner's PCRA petition, we must first determine whether it is timely under the PCRA's jurisdictional time-bar.[3] A

---

[3] Because the issue of whether a PCRA petition is timely raises a question of law, our standard of review is *de novo*. *See Commonwealth v. Reid*, 235 A.3d 1124, 1166 (Pa. 2020).

PCRA petition, "including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final." 42 Pa.C.S. § 9545(b)(1). A judgment becomes final at the conclusion of direct review, "including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S. § 9545(b)(3). Because the timeliness requirements of the PCRA are jurisdictional in nature, courts cannot address the merits of an untimely petition. **See Commonwealth v. Moore**, 247 A.3d 990, 998 (Pa. 2021).

Kushner's judgment of sentence became final on January 11, 2012, when his time to file a petition for *writ of certiorari* with the Supreme Court of the United States expired. **See** 42 Pa.C.S. § 9543(b)(3). Because he did not file the instant PCRA petition until more than eight years later in July 2020, it is facially untimely and he must plead and prove one of the three limited exceptions to the time-bar:

> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
>
> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
>
> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i)-(iii).

Kushner invokes the newly-discovered facts exception at Section 9545(b)(1)(ii) pursuant to which he must establish: "1) the **facts** upon which the claim was predicated were **unknown** and 2) could not have been ascertained by the exercise of **due diligence**." *Commonwealth v. Howard*, 249 A.3d 1229, 1235 (Pa. Super. 2021) (citation omitted; emphases original). "If the petitioner alleges and proves these two components, then the PCRA court has jurisdiction over the claim under this subsection." *Id.* (citation omitted). "Thus, the 'new facts' exception at Section 9545(b)(1)(ii) does not require any merits analysis of an underlying after-discovered-evidence claim."[4] *Id.* (citation omitted).

"Due diligence demands that the petitioner take reasonable steps to protect his own interests [and] explain why he could not have learned the new fact(s) earlier with the exercise of due diligence." *Id.* at 1234 (citation omitted). "This rule is strictly enforced." *Id.* (citation omitted).

Additionally, "it is well-settled that there is no absolute right to an evidentiary hearing on a PCRA petition, and if the PCRA court can determine from the record that no genuine issues of material fact exist, then a hearing

---

[4] *See* 42 Pa.C.S. § 9543(a)(2)(vi) (providing for post-conviction relief based on after-discovered exculpatory evidence after jurisdictional threshold is met).

is not necessary." ***Commonwealth v. Allison***, 235 A.3d 359, 364 (Pa. Super. 2020) (citation omitted); ***see also*** Pa.R.Crim.P. 907(1).

**B.**

As noted, Kushner bases his after-discovered facts claim on Strohm's report summarizing his interview with Gary in October 2019 wherein Gary allegedly stated that he had no intention of killing Wife and that he "told [Kushner] that from the beginning." Kushner asserts that he became aware of this information "only after the false affidavit [attached to his sixth PCRA petition] was submitted and Investigator Strohm then contacted [Gary] by phone." (PCRA Petition, at Paragraph 44; ***see also*** Kushner's Brief, at 18). Kushner argues this evidence is "entirely different" from Gary's trial testimony and that it represents a "sea change in the evidence of this case" reflecting that Gary's testimony was tainted, that he never had any intention of committing the crime and that he was threatened with a jail term if he did not cooperate with police. (Kushner's Brief, at 17-18, 21).

In assessing Kushner's claims, the PCRA court concluded:

> The fact that Gary was an uncooperative witness was known at trial. It was elicited at trial that he did not want to testify, was given immunity, and had been incarcerated for 10 days on a material witness warrant prior to trial in order to secure his testimony.
>
> . . . [A]ny "facts" related to something purportedly told to the Defendant by Gary cannot satisfy the time bar as these were not previously unknown facts that could not be ascertained with the exercise of due diligence as required by §9545(b)(1)(ii). Assuming that Gary did in fact tell the Defendant that he had no intention of carrying out the crime, that fact would have been

known to the Defendant at the time of trial, at the time of his direct appeal, and at the time of his timely collateral review. Furthermore, Gary testified at trial that he was never going to carry out the crime. The defendant's seventh petition, filed nearly eight years after his sentence became final, was properly dismissed without a hearing as he failed to overcome the PCRA's jurisdictional time limits.

(PCRA Ct. Op. at 12-13) (record citation omitted).

We agree with the PCRA court's analysis. Kushner has failed to demonstrate that the purported "newly-discovered facts" were unknown at the time of trial or that he has exercised due diligence in obtaining them. Although Kushner maintains that he could not have discovered the information from Gary until after the fraudulent affidavit was filed, this assertion is not persuasive. Kushner frames the comments Gary made in the 2019 interview as entirely different from his trial testimony, but the record reflects that his interview was consistent with his trial testimony insofar as he maintains that he never intended to carry out Wife's killing. (*See* Kushner's Brief, at 17; N.T. Trial at 128, 139-40). The information, therefore, cannot be accurately characterized as "new." Defense counsel thoroughly cross-examined Gary at trial concerning the circumstances of his reluctant cooperation with the Commonwealth and had ample opportunity to highlight the impact of the immunity agreement. Any issue regarding Gary's interaction with the Commonwealth was already part of this case over 10 years ago. Likewise, Kushner was well aware at that time of any information Gary "told him [] from

the beginning" concerning his intention, or lack thereof, to follow through on the killing. (**See** PCRA Petition, at Paragraph 22).

In sum, Kushner has fallen short of establishing an exception to the statutory time-bar. Because this seventh PCRA petition is untimely and Kushner has not demonstrated the applicability of the newly-discovered facts exception, this Court is without jurisdiction to provide further review of the merits of his petition.[5] The PCRA court, therefore, properly dismissed Kushner's petition without a hearing.

Order affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

Date: _11/3/2021_

---

[5] We note Kushner's argument that jurisdiction and venue were improper in Montgomery County because no "overt act" occurred there and any contact he had with Gary took place in Philadelphia is a transparent attempt to relitigate the claim he has made in previous PCRA petitions that the Court of Common Pleas of Montgomery County lacked jurisdiction over this case. (**See** Kushner's Brief, at 29-30). We reiterate our admonition that Kushner cannot resurrect previous claims by asserting a new theory under the guise of one of the PCRA timeliness exceptions. (**See Commonwealth v. Kushner**, 2019 WL 243913, at *2) (Pa. Super. Ct. filed Jan. 17, 2019).