# IN THE SUPREME COURT OF PENNSYLVANIA
## EASTERN DISTRICT

COMMONWEALTH OF PENNSYLVANIA,    :   No. 223 EAL 2021

      Respondent       :

:   Petition for Allowance of Appeal
:   from the **Published Opinion and**
:   **Order** of the Superior Court at No.
      v.       :   2821 EDA 2019, at 249 A.3d 1229
:   (Pa. Super. 2021) (**Bender**, P.J.E.,
:   Kunselman, Pellegrini, JJ.), entered

MELVIN HOWARD,       :   on April 20, 2021, **affirming** the
:   PCRA Order of the Philadelphia

      Petitioner       :   County Court of Common Pleas at
:   No. CP-51-CR-0304271-1988
:   (Brinkley, J.), entered on September
:   11, 2019
:

## CONCURRING STATEMENT

**JUSTICE DOUGHERTY**                 **FILED:  November 12, 2021**

In *Commonwealth v. Small*, 238 A.3d 1267 (Pa. 2020), a majority of this Court, over the partial dissent of three Justices (including this one), disavowed the "public record presumption" that previously had applied to petitioners seeking relief under the newly-discovered facts exception to the Post Conviction Relief Act ("PCRA").  *See* 42 Pa.C.S. §9545(b)(1)(ii) (excusing from the PCRA's general one-year jurisdictional timebar those petitions that allege and prove that "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence").  That presumption, generally speaking, operated to impute knowledge of facts to PCRA petitioners once they became part of the public record.  The *Small* majority, however, concluded the presumption existed "only because this Court engrafted it upon [Section 9545(b)(1)(ii)'s] language in [*Commonwealth v. Lark*, 746 A.2d 585, 588 n.4 (Pa.

2000)], and then perpetuated our extra-statutory innovation in later cases[.]" *Small*, 238 A.3d at 1284. Thus, the majority rejected any continuing "categorical rule of exclusion" regarding matters of public record and overruled a swath of prior decisions that had relied upon and applied it. *Id.*

In the present matter, the Court grants Melvin Howard's petition for allowance of appeal, vacates the Superior Court's published opinion below, *see Commonwealth v. Howard*, 249 A.3d 1229 (Pa. Super. 2021), and remands with a general instruction for that court to "apply" our decision in *Small*. But the Court's *per curiam* order does not inform that court regarding which aspect(s) of its published opinion the Court finds troubling or explain how it ran afoul of *Small*. In the absence of such guidance, I offer the following perspective.

Before the PCRA court, petitioner alleged a *Batson*[1] violation — a claim which he similarly raised more than two decades ago in an earlier, unsuccessful PCRA petition. Recognizing his instant petition was plainly untimely, petitioner averred he met the newly-discovered facts exception under Section 9545(b)(1)(ii) based on the 2018 release of the Joint State Government Commission Report on Capital Punishment ("JSGC Report"). More specifically, he argued the "material facts upon which the claim is presented — the conclusions and recommendations set forth in the JSGC Report — were not available to [him, his] counsel, or the public until June 25, 2018, and could not have been ascertained earlier by the exercise of due diligence." PCRA Petition, 8/23/2018 at ¶15; *id.* at ¶18 ("[Petitioner] relies in significant part on the recommendations and conclusions of the JSGC Report, which were entirely unknown to him before June 25, 2018.").

Beyond his broad-based reliance on the "conclusions and recommendations set forth in the JSGC Report," petitioner also more pointedly argued that "a governmental

---

[1] *Batson v. Kentucky*, 476 U.S. 79 (1986).

agency's public admission of widespread, systematic error in criminal prosecutions, like the JSGC Report and the gubernatorial moratorium based thereon, itself presents a new fact triggering the 60-day time period to file a successive PCRA claim." *Id.* at ¶17, *citing Commonwealth v. Chmiel*, 173 A.3d 617, 626 (Pa. 2017). And, with respect to Section 9545(b)(1)(ii)'s due diligence component, petitioner claimed he "could not have presented this petition earlier because the report's conclusions and recommendations establish 'a new theory or method of obtaining relief on collateral review.'" *Id.* at ¶15, *quoting Commonwealth v. Smith*, 35 A.3d 766, 771 (Pa. Super. 2011).[2] The Commonwealth opposed the petition for relief, and the PCRA court subsequently issued a Pa.R.Crim.P. 907 notice of intent to dismiss the petition as untimely and meritless.

On appeal, petitioner largely pressed the same arguments he raised below. Significantly, though, he clarified what he believed to be the new fact that gave the PCRA court jurisdiction over his petition: "The new fact is not that [petitioner] was convicted by a biased jury; what conferred jurisdiction on the lower court is the JSGC's admission that juries selected in capital cases like [petitioner]'s were shaped by a jury selection process that eliminated certain social and demographic groups." Petitioner's Superior Court Brief at 11. Then, in his reply brief, which was submitted **after** this Court decided *Small* (though he did not cite or rely on it), petitioner honed his argument further still:

> [T]he fact at issue is not the evidence and data underlying the JSGC Report or even the record evidence in [petitioner]'s case. Rather, the 'new fact' giving rise to [petitioner]'s claims of constitutional error is the JSGC's public admission, following an internal investigation, that juries selected in capital cases like [petitioner]'s were shaped by a discriminatory jury selection process that eliminated certain social and demographic groups. It is this

---

[2] Parenthetically, I observe this Court has recently and "expressly disapprove[d] of the analysis employed by the *Smith* majority[.]" *Commonwealth v. Reid*, 235 A.3d 1124, 1148 n.15 (Pa. 2020); *see id.* at 1148 (concluding "a judicial opinion — even one which may establish a new theory or method of obtaining relief — does not amount to a new 'fact' under Section 9545(b)(1)(ii) of the PCRA") (internal quotations, brackets, and citation omitted).

admission by a governmental agency of widespread systemic error in criminal prosecutions, and the recommendation that defendants be able to pursue relief based on statistical racial disparities in jury composition, that conferred jurisdiction on the PCRA court.

Petitioner's Superior Court Reply Brief at 4, *citing Chmiel*, *supra*.

The Superior Court ultimately rejected this argument. After reproducing at length the PCRA court's analysis, as well as portions of this Court's decision in *Chmiel*, the Superior Court held the JSGC Report is "distinguishable from the public admissions at issue in *Chmiel*." *Howard*, 249 A.3d at 1238. It explained:

> In *Chmiel*, . . . the FBI admitted that its hair analysis was flawed in the vast majority of cases, and that its own experts, and the experts trained by the FBI, had given fatally flawed scientific opinion testimony concerning the strength of that evidence in virtually every case in which hair analysis was presented. That provided a distinct and concrete link to the flawed evidence and related scientific opinion testimony presented at Chmiel's trial, where the Commonwealth had presented a witness . . . who had made the problematic scientific claims.

> There is no analogous admission in the instant case regarding the prosecutor's ostensible discriminatory exclusion of jurors at Appellant's capital trial. Rather, . . . a systemic problem has been identified in the JSGC Report regarding racial and other problematic demographic disparities in jury selection. However, there has been no revelation in the JSGC Report of a specific error in Appellant's case, an admission of such an error by the prosecutor or the District Attorney's office, nor an admission of a systemic error that necessarily impacted Appellant's case. Thus, Appellant fails to convince us that his claim is on par with the revelations that triggered the timeliness exception of Section 9545(b)(1)(ii) in *Chmiel*. Accordingly, we conclude that the JSGC Report does not constitute a "newly-discovered fact" that was previously unknown to Appellant when he filed the PCRA petition under review.

> Consequently, we need not address whether Appellant acted with due diligence in acquiring that information, because he fails to satisfy the first prong of the test for newly-discovered facts. Appellant concedes that he relies "in significant part on the recommendations and conclusions of the JSGC Report, which were entirely unknown to him before the report was issued on June 25, 2018," and not the underlying statistical data. Appellant's Brief at 16. Because we determine those conclusions do not constitute newly-discovered facts within the meaning of Section 9545(b)(1)(ii), it is unnecessary to determine if Appellant acted diligently in discovering the JSGC Report.

*Id.* at 1239.

Nothing about this thoughtful analysis, to my mind, is remotely implicated by our decision in *Small*. Indeed, the phrase "public record" is entirely absent from this part of the Superior Court's discussion. I therefore do not believe our present instruction to "apply" *Small* pertains to this specific holding — which, in my view, was the crux of the Superior Court's opinion.

Nevertheless, I join the Court's decision to remand this matter because there are other stray statements throughout the Superior Court's opinion that could arguably be interpreted as conflicting with the holding in *Small*. Most notably, at least one aspect of the PCRA court's opinion as block-quoted by the Superior Court makes direct reference to law that is no longer sound:

> Without specifying which conclusions and recommendations are new and analogous in nature to the new facts in *Chmiel*, the relief granted in *Chmiel* is inapplicable to [Appellant]. **Indeed, a review of the JSGC [R]eport shows that the underlying data used to perform the statistical analysis was not new and was part of the public domain before the report's release. Since the underlying data was known and available to the public for years prior to the report's release, and [Appellant] has been represented by counsel so the *pro se* defendant exception does not apply, this report cannot be considered a newly-discovered fact for purposes of overcoming the time bar.**
>
> Furthermore, the JSGC [R]eport is substantially different than the press release in *Chmiel*. The press release in *Chmiel* contained an admission of improper scientific analysis from the prosecutorial agency that had been convicting defendants using this analysis. The JSGC [R]eport, on the other hand, was released by an independent and bipartisan governmental agency and does not include any language that could be considered an admission of error by prosecutors or the judiciary with respect to the imposition of the death penalty. [Appellant] claims that the report contains "the admission of widespread, systemic error in criminal prosecutions," however, this [c]ourt's review of the text of the report did not uncover such an admission. While the report does note areas of concern and suggests recommendations, it does not go so far as to admit widespread, systemic error in criminal prosecutions. It should also be noted that the task force members behind the report are Pennsylvania state senators, unlike the press release in *Chmiel* which was released by the FBI,

a federal law enforcement agency. Since the holding in *Chmiel* is inapplicable, this [c]ourt properly dismissed [Appellant]'s petition as untimely[,] since the JSGC [R]eport was not a newly-discovered fact capable of overcoming the PCRA's time bar.

*Howard*, 249 A.3d at 1238 (emphasis added), *quoting* PCRA Court Opinion at 8-9. Problematically, immediately following the reproduction of this lengthy quote, the Superior Court expressed its "agree[ment] with the PCRA court." *Id.*

To me, it is reasonable to presume the Superior Court intended to endorse only the latter paragraph it quoted from the PCRA court's opinion, particularly since that discussion plainly supports the court's ultimate holding as described above. This assumption is further supported by the fact that the Superior Court expressly acknowledged petitioner's concession that he was "not relying on the underlying data of the JSGC Report." *Id.* Since petitioner disavowed any reliance on the data itself as the source of the "new fact," it would have been entirely irrelevant whether that data was within the public domain or not. And, to reiterate, the Superior Court resolved the case by holding that the JSGC Report's "**conclusions**" — rather than the data on which they were based — "do not constitute newly-discovered facts within the meaning of Section 9545(b)(1)(ii)[.]" *Id.* at 1239 (emphasis added).

In sum, I do not believe the Superior Court's published decision below was intended to, or actually does, violate this Court's holding in *Small*. Nevertheless, because it could appear to some that the intermediate court seemingly endorsed statements by the PCRA court regarding the now-defunct public record presumption, I join the Court's decision to vacate and remand for clarification.

Justice Mundy joins this concurring statement.